UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL J. FROMMERT, et al.,

Plaintiffs,

v.

SALLY L. CONKRIGHT, et al.,

Defendants.

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS'
FEES AND COSTS**

**00-CV-6311(L)**

After over a decade of litigation, on December 14, 2011, this Court entered a final judgment in favor of the vast majority of the plaintiffs. Pursuant to 29 U.S.C. § 1132(g), plaintiffs hereby move for an award of their attorneys' fees and costs.

Statement of Facts

The Complaint in this action was filed in 1999. The docket entries in this lengthy and hotly contested litigation number in the hundreds. This matter has been before this Court for over a decade, has been before the Second Circuit three different times, and even the United States Supreme Court rendered an opinion in this case. The length, breadth and complexity of this litigation have been exceptional.

This litigation may be tracked by the numerous published opinions it has generated.   On June 3, 2002, this Court wrote a published opinion that granted in part and denied in part Xerox's motion to dismiss.  *Frommert v. Conkright*, 206 F. Supp. 2d 435 (W.D.N.Y. 2002).   On July 30, 2004, on cross-motions for summary judgment, this Court issued a published opinion that dismissed the Amended Complaint.  *Frommert v. Conkright*, 328 F. Supp. 2d 420 (W.D.N.Y. 2004).   On January 6, 2006, the Second Circuit reversed and remanded.  *Frommert v. Conkright*, 433 F.3d 2d 254 (2nd Cir. 2006).

On January 24, 2007, after multiple rounds of briefing and argument, this Court wrote a published opinion that granted the vast majority of the relief sought by plaintiffs, ordered Xerox to pay plaintiffs their pensions without any consideration of a phantom account, and ordered Xerox to respond within thirty days to plaintiffs' motion to file a Second Amended Complaint. *Frommert v. Conkright*, 472 F. Supp. 2d 452 (W.D.N.Y. 2007).  Rather than comply with this Order, on February 5, 2007, Xerox filed an interlocutory appeal with the Second Circuit.  [Docket No. 138]

On July 24, 2008, the Second Circuit affirmed in large part this Court's January 24, 2007 Order, but reversed with respect to various releasors. *Frommert v. Conkright*, 535 F.3d 2d 111 (2nd Cir. 2008).  Xerox requested a

stay of the Second Circuit's decision from the Supreme Court, which denied this request in a published decision. *Conkright v. Frommert*, 556 U.S. 1401 (2009). After the Second Circuit's opinion, several motions were again filed and briefed in this Court [Docket Nos. 158-97], including a motion for interim attorney's fees and costs. [Docket No. 186]

On June 29, 2009, the Supreme Court granted certiorari. *Conkright v. Frommert*, 129 S. Ct. 2860 (2009). After briefing and oral argument, on April 21, 2010, in a 5-3 opinion, the Supreme Court reversed and remanded to the Second Circuit. *Conkright v. Frommert*, 130 S. Ct. 1640 (2009).

After another round of briefing, on August 2, 2010, the Second Circuit remanded the matter to this Court. On October 7, 2010, plaintiffs filed a motion to enter judgment in their favor, Xerox filed a response and cross-motion, and various other motions and briefs were filed. [Docket Nos. 204-235] On June 2, 2011, this Court held a hearing with respect to the pending motions, and oral argument lasted for over six hours. On November 17, 2011, this Court entered an Order granting plaintiffs' motion in part, ordered Xerox to pay plaintiffs their pension without utilizing a phantom account, and denied the pending 2009 motion for interim attorneys' fees and costs "without prejudice to plaintiffs' seeking attorneys' fees and costs following the entry of a final judgment in this case." [Docket No. 237]

On December 14, 2011, pursuant to plaintiffs' request, this Court entered a final judgment.  Pursuant to this Court's Order of November 17, 2011, plaintiffs accordingly file the present motion to recover their attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

Argument

A. <u>Recovery of Attorneys' Fees Is Appropriate Because Plaintiffs Obtained "Some Degree of Success" in the Action.</u>

The Supreme Court recently clarified that Section 1132(g) authorizes an award of attorneys' fees to an ERISA litigant if she has achieved "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2157-58 (2010).  This standard recognizes that without recovery of attorneys' fees, litigants and counsel alike may well be unwilling to undertake the financial burden of complex ERISA litigation, especially when (as here) the litigation involves a prolonged challenge against a well-funded adversary.  For this reason, "ERISA's attorney's fees provisions must be liberally construed to protect the statutory purpose of vindicating" employee benefits.  *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2nd Cir. 1987).

There is no doubt that plaintiffs have obtained "some degree of success on the merits" in this litigation.  This Court has held that Xerox reduced plaintiffs' pensions by an illegal "phantom account," that the use of such an

4

offset by Xerox was "arbitrary and capricious" and violated ERISA, and entered a final judgment on December 14, 2011 in favor of plaintiffs in which Xerox was ordered to pay plaintiffs their pensions without utilizing any sort of phantom offset. Plaintiffs have clearly achieved some degree of success on the merits.

Moreover, this success is not merely doctrinal, but practical as well. Xerox's illegal application of a phantom account reduced plaintiffs' pensions by millions of dollars; accordingly, as a direct result of this litigation, plaintiffs will recover millions of dollars in additional pension compensation under the final judgment. The precise dollar amount of this figure is not yet known, as Xerox's attorney has represented that it will take until 2012 for its actuaries to generate benefit entitlements under the final judgment; moreover, the fact that several plaintiffs remain active Xerox employees means that the exact amount of their ultimate benefit cannot now be precisely assessed. Stris Decl., ¶ 10.

Nonetheless, a chart prepared by Xerox calculated that even as of March 1, 2006, and even after deducting the "Plan Administrator" offset, plaintiffs have obtained over $3.2 million in additional pension benefits as a direct result of this Court's final judgment. Stris Decl., ¶ 10. Moreover, given the passage of time, the final recovery will likely be even higher, as most

plaintiffs continued to accrue years of service and salary increases during the 13-year history of this litigation.  Stris Decl., ¶ 10.

These millions of dollars in increased pension payments surely constitute "some degree of success" in the litigation.  It is true that, like most plaintiffs, the Xerox employees here requested a higher damage amount than they were ultimately awarded.  Every plaintiff receiving a judgment for a specified amount might always have received a larger judgment.  Moreover, in any lawsuit lasting over a decade, every party will have some victories as well as some defeats.  Plaintiffs nonetheless ultimately obtained millions of dollars in relief.  They accordingly obtained "some degree of success" in this decade-long litigation.

Xerox initially reduced plaintiffs' pensions through the use of a phantom offset.  This Court granted relief to plaintiffs that declared this offset illegal and in violation of ERISA.  Xerox then advanced a "Plan Administrator" approach that applied a phantom account commencing in 1998 (the "PA-98 Cutoff").  Plaintiffs opposed this approach and obtained a final judgment that precludes its use.  The difference between the final judgment and the PA-98 Cutoff alone amounts to millions of dollars in additional pension benefits.  Stris Decl., ¶ 10.  This multi-million dollar recovery constitutes a substantial degree of success.

Xerox's prior filings provide substantial insight into the degree of success obtained by plaintiffs in this litigation.  According to Xerox's filings in the parallel *Miller* case, application of the Plan Administrator approach as required by the final judgment in this case

> results in a dramatic increase in the potential benefits due to each of the Plaintiffs in comparison to their benefits under the "phantom account" approach.  As reflected on Exhibit A, Allen's provisional lump sum distribution from the RIGP is $108,759.12, which is based on the RIGP formula benefit with the applicable offset, which turned out to be Allen's highest potential benefit.  This amount under Xerox's [PA-No 98 Cutoff] Approach is over *thirteen* times the total amount due Allen under the Plan's current approach, which was $8,315.58.
>
> For both Miller and Sudduth, their highest benefits turned out to [be] the CBRA benefit, such that [the PA-No 98 Cutoff] Approach would result in both being treated as "new hires" . . . . [and] benefits [] in both cases would be more than *three* times the total lump sum amounts due under the prior approach.

Xerox Brief in Response to Court Order, Strain Decl., ¶ 32 & Exh. F (emphases in original).

According to Xerox's 2006 calculations, the results obtained by plaintiffs pursuant to the final judgment in *Frommert* are similarly dramatic.  Plaintiff Harold Mitchell, for example, obtained no pension at all under Xerox's phantom account.  Plaintiffs have successfully obtained a judgment declaring this phantom account illegal.  Xerox's proposed PA-98 Cutoff Plan Administrator approach would have given Mr. Mitchell a lump-sum

pension of $16,279.   Under the final judgment, however, Mr. Mitchell is entitled to a lump-sum pension of approximately $48,864, an infinite increase over his phantom account (non)pension and a threefold increase over Xerox's original PA-98 Cutoff Plan Administrator approach.   Stris Decl., ¶ 11.

Plaintiff Donna Lipari obtained similar benefits.   She too obtained no pension whatsoever under Xerox's phantom account.   She would have obtained a trivial pension -- $4,169 – under Xerox's original Plan Administrator approach (PA-98 Cutoff).   She instead obtained a five-fold increase in her pension benefit (to $21,914) as a result of the final judgment entered in the present action.   Stris Decl., ¶ 11.

Xerox continues to apply the phantom account to every rehired Xerox employee until a court orders it not to do so.   Stris Decl., ¶ 11.   But for this lawsuit, Xerox would thus continue to reduce plaintiffs' pension by the full amount of the illegal phantom offset.   The final judgment orders that Xerox not apply any sort of phantom account to plaintiffs' pension.   This judgment provides both legal as well as millions of dollars in concrete monetary relief to plaintiffs.   The final judgment entered in favor of plaintiffs thus constitutes "some degree of success on the merits" sufficient to authorize the recovery of costs and attorney's fees pursuant to 29 U.S.C. § 1132(a).

## B. Plaintiffs Should Be Awarded Their Lodestar Attorneys' Fees.

Because they achieved "some degree of success" in the litigation, plaintiffs should recover their lodestar attorneys' fees.   The Supreme Court recently held that lodestar awards are the "guiding light of our fee-shifting jurisprudence" and that recovery of this amount is "presumptively reasonable." *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672-73 (2010).  As the Second Circuit recently noted, "a district court may adjust the lodestar when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'  However, such adjustments are only appropriate in 'rare circumstances,' because the 'lodestar figure already includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 167 (2nd Cir. 2011) (quoting *Perdue*); *see also Perdue*, 130 S.Ct. at 1672-73 (departures from lodestar amount are permitted only in "rare" and "exceptional" circumstances).

The lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Due to the extraordinary length and nature of this litigation, several attorneys have prosecuted this action (at different levels) during its pendency.  Plaintiffs hereby seek to recover for the majority of the

hours expended by their counsel on this matter, but also simultaneously waive recovery of a substantial number of additional hours.

The Jaffe Counsel.  This action was originally filed by Robert Jaffe, Esq. in 1999.  Mr. Jaffe undertook the gargantuan task of representing and coordinating each of the nearly one hundred individual plaintiffs in this case, and prosecuted the action during the first round in this Court – involving numerous pleadings and motions – between 1999 and 2004.  Mr. Jaffe thereafter prosecuted plaintiffs' successful appeal before the Second Circuit between 2004 and 2006, as well as the second round of litigation in this Court -- again with numerous briefs and cross-motions -- during 2006 and 2007.  Strain Decl., ¶¶ 27-29.

Not surprisingly, given the size of this litigation, Mr. Jaffe was not the sole attorney on the case.  Mr. Jaffe's associates, attorneys Mark Watson and Beach Wires, worked extensively on this matter.  Ziegler Decl., ¶¶ 4-24.  Moreover, from the outset of the litigation, Mr. Jaffe also retained attorney John Strain, who was (and is) an expert on the numerous complex tax and ERISA issues raised by this action.  Strain Decl., ¶¶ 1-9.

As this Court knows, the scope of this litigation and Mr. Jaffe's efforts on its behalf took a heavy toll on his health.  During 2008, as the matter was again before the Second Circuit, plaintiffs obtained the additional services of

appellate counsel from Stris & Maher, LLP. *See infra*. Mr. Jaffe continued to prosecute this matter, with a reduced role, during 2008 and 2009, and during this period, filed a Motion for Award of Interim Attorneys' Fees and Litigation Expenses. (Docket No. 186).

Several plaintiffs have died during the pendency of this thirteen-year litigation. Sadly, Mr. Jaffe also did not live to see the fruits of his laborious work. Mr. Jaffe died in 2009. Mr. Jaffe's law office disbanded. At this point, Stris Maher LLP had responsibility for prosecution of this action, and Mr. Strain continued to perform in a consulting role. Strain Decl., ¶¶ 11-30.

As to Mr. Jaffe's services, plaintiffs seek to recover only those fees delineated in the Interim Motion. Due to the difficulty of obtaining current time records from Mr. Jaffe apart from those submitted alongside the Interim Motion, although plaintiffs remain responsible for them, plaintiffs waive the additional costs and fees expended by Mr. Jaffe after the filing of this motion and prior to his death. Ziegler Decl., ¶¶ 5-13.

During the initial decade of this litigation, Mr. Jaffe devoted a total of 3209.5 compensable hours to its prosecution for which plaintiffs seek relief (again, the actual figure is substantially higher). Ziegler Decl., ¶¶ 5-24. This figure equates to roughly 320 hours per year, or six hours per week. Plaintiffs also seek to recover 1822.5 hours expended by Mr. Watson and

700.25 hours expended by Mr. Wires.  Ziegler Decl., ¶¶ 5-24.  This is about 3.5 and 1.3 hours per week, respectively.

Mr. Strain assisted in the prosecution of this action not only during its initial ten years, but also (alongside Stris & Maher LLP) thereafter.  He was assisted in later years by his associate, and now partner, Amber Ziegler.  Plaintiffs seek to recover only those fees and expenses devoted by Mr. Strain and Ms. Ziegler directly and exclusively to the prosecution of the *Frommert* action.  Plaintiffs also do not seek fees for any of the substantial hours devoted to prosecution of the claims filed on behalf of the releasors, and have accordingly waived several hundred professional hours devoted to such endeavors (including but not limited to those expended by Mr. Strain and the attorneys at Stris & Maher LLP).  Stris Decl., ¶ 8.

During the thirteen years of this litigation, Mr. Strain devoted 337.6 compensable hours, and Ms. Ziegler devoted 166.1 hours, for which the *Frommert* plaintiffs are responsible and seek recovery.  Strain Decl., ¶¶ 12-24.  These figures equate to an average of under one hour per week devoted by Mr. Strain and Ms. Ziegler combined between 1999 and the present.

The Stris & Maher Counsel.  Beginning in 2008, with Mr. Jaffe's health in decline and the case again before the Second Circuit, plaintiffs retained experienced appellate counsel to take over primary responsibility for this

action.  The appeal before the Second Circuit, the briefs in connection with the writs of certiorari to the Supreme Court, the merits briefs in the Supreme Court (and coordination with the numerous *amici* briefs filed on behalf of plaintiffs), the oral argument in the Supreme Court, the briefs filed on remand to the Second Circuit, and the briefs and motions filed in this Court on remand (alongside their oral argument) were all prosecuted by Stris & Maher LLP.

Attorney Peter Stris is the co-founder of Stris & Maher LLP.  Mr. Stris is a nationally recognized ERISA litigation expert and has argued more ERISA cases in the United States Supreme Court over the last decade (three) than anyone in the world.  Mr. Stris assisted in the briefing and personally argued every one of the appeals and motions filed in this matter (other than the first Second Circuit appeal) since 2008.  Over the past four years, Mr. Stris has devoted 1012 hours to the prosecution of this action, which is an average of fewer than five hours a week. Stris Decl., ¶ 8.

Attorney Brendan Maher is the other co-founder of Stris & Maher LLP.  Mr. Maher is an accomplished appellate advocate, and has litigated a number of high-profile ERISA appeals.  Mr. Maher argued the successful appeal before the Second Circuit in this matter in 2008, and was intimately involved in the subsequent proceedings on the merits in the Supreme Court.

During the past four years, Mr. Maher has expended 1076.1 hours on the prosecution of this action, which is an roughly five hours per week. Maher Decl., ¶ 8.

Attorney Shaun Martin has worked alongside Stris & Maher LLP since primary responsibility for this matter passed from Mr. Jaffe in 2008. Mr. Martin is a specialist in appellate and civil procedure, and is a tenured faculty member at the University of San Diego School of Law. Mr. Martin has personally written or assisted in the writing of each of the numerous submissions filed in this action in the Second Circuit, the Supreme Court, and this Court since 2008, and has also undertaken primary responsibility for coordination amongst the clients and counsel in this action. During the past four years, Mr. Martin has devoted 921.8 hours to the prosecution of this action, which is an average of fewer than 4.5 hours per week. Martin Decl., ¶¶ 4-6.

Several additional associate attorneys employed by Stris & Maher and Mr. Martin have also worked on this case during the past several years, and have collectively expended hundreds of additional hours on its behalf. Plaintiffs do not seek to recover attorneys' fees for *any* of these associate hours. Numerous paralegals employed by Mr. Strain, Mr. Martin, and Stris & Maher LLP have also devoted a substantial period of time to this matter

during the past decade.  Plaintiffs again do not seek to recover fees for *any* of these paralegal hours.  Plaintiffs further do not seek to recover attorneys' fees for the hundreds of hours spent on the claims of the releasors, notwithstanding the fact that these plaintiffs did indeed achieve "some success in the litigation" but were compelled to trade away that success in order to receive other rights under the Xerox VRIF program.  Stris Decl., ¶ 8.

After these reductions, the total compensable lodestar hours during the thirteen years of this litigation for which plaintiffs seek recovery are:

| Timekeeper | Hours |
|---|---|
| Robert Jaffe, Esq. | 3209.50 |
| Brendan Maher, Esq. | 1076.10 |
| Shaun Martin, Esq. | 921.80 |
| John Strain, Esq. | 337.60 |
| Peter Stris, Esq. | 1012.00 |
| Mark Watson, Esq. | 1822.50 |
| Beach Wires, Esq. | 700.25 |
| Amber Ziegler, Esq. | 166.10 |

Plaintiffs support these lodestar figures with detailed time sheets and declarations regarding each task performed.  *See* Maher Decl., ¶ 8 & Exh.; Martin Decl., ¶¶ 4-6 & Exh.; Strain Decl., ¶¶ 10-24 & Exhs.; Stris Decl., ¶ 8 & Exh.; Watson Decl., ¶¶ 2-7 & Exh.; Wires Decl., ¶¶ 4-4 & Exh.; Ziegler Decl., ¶¶ 4-24 & Exhs.

The second component of the lodestar is the reasonable hourly rate of the professional. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Further, in order to provide adequate compensation where the services were performed many years before the award was made, the rates used to calculate the lodestar should be current rather than historical rates." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2nd Cir. 1998); *see also Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) ("Compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would be the case with private billings.")

The proper hourly rate is that reasonably charged by the professional in the relevant market for cases of a similar type. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 168 (2nd Cir. 2011). "A reasonable attorney's fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

The hourly rates sought herein are all lower than the hourly rates charged by these professionals to paying clients. They are also lower than the hourly rates charged by Xerox's attorneys in this same litigation. Plaintiffs encourage Xerox to reveal forthrightly the hourly fees charged by their counsel in this matter – Mr. Long, Mr. Wick, Mr. Pistilli, and Ms. Clemens

– in the event there is any dispute regarding the reasonable value of the services rendered in this matter.

Mr. Jaffe had over thirty years of experience at the time he commenced this litigation, and had over forty years at the end.  His tasks with respect to this complex matter with over one hundred individual plaintiffs were enormous.   Plaintiffs seek $400/hour for Mr. Jaffe.   This amount is reasonable, as well as well within the market rate for Mr. Jaffe's services in a litigation of this type.  Hoskins Decl., ¶ 4; Strain Decl., ¶ 25, 30.  It is also substantially lower than hourly lodestar fee awards made in similar ERISA cases.  *Taffee v. Life Ins. Co.*, 769 F. Supp. 2d 530, 542-43 (S.D.N.Y. 2011) (collecting and citing hourly fee rates in 2011 in ERISA cases in New York ranging from $560/hour to $480/hour); *Oster v. Standard Ins. Co.*, 768 F. Supp. 2d 1026, 1034-35 (N.D. Cal. 2011) (collecting and citing hourly fee rates in 2011 in ERISA cases ranging from $650/hour to $400/hour).

Mr. Strain has thirty-seven years of experience in ERISA matters since his graduation from the University of Chicago Law School and is eminently qualified.  Plaintiffs seek $400/hour for Mr. Strain, a rate that is again well within the market rate for lawyers with Mr. Strain's attributes in a litigation of this type.  Hoskins Decl., ¶ 4; Strain Decl., ¶¶ 25-26. Plaintiffs seek rates of $325/hour for Mr. Watson and $225/hour for Mr. Wires and Ms. Ziegler,

also at the low end of the market for professionals with their level of experience in cases of this nature.  Hoskins Decl., ¶ 4; Strain Decl., ¶ 25; Ziegler Decl., ¶ 25.

Plaintiffs also retained the appellate ERISA specialists at Stris & Maher LLP, who litigated this matter at the United States Supreme Court.  Mr. Stris is one of the preeminent ERISA appellate lawyers in the United States. Plaintiffs seek $575/hour for his services; this amount is lower than the rate Mr. Stris regularly charges paying clients in similar cases.  Stris Decl., ¶ 9. Thomas Goldstein, one of the nation's most experienced appellate and Supreme Court practitioners, and who has also argued multiple ERISA appeals in the Supreme Court and elsewhere, affirms that Mr. Stris' hourly rate is well within the market rate for services performed by lawyers with his experience in similar cases.  Goldstein Decl., ¶ 5; Hoskins Decl., ¶ 4.

The same is true for the other Stris & Maher attorneys, Mr. Martin and Mr. Maher.  Mr. Martin has twenty years of legal experience and has litigated a wide variety of ERISA and appellate cases.  His rate of $575/hour is lower than the rate he routinely charges to dozens of paying clients in similar cases and is well within the market rate for services performed by lawyers with his experience.  Goldstein Decl., ¶ 5; Hoskins Decl., ¶ 4; Martin Decl., ¶ 7.

Plaintiffs seek a slightly lower rate of $540/hour for Mr. Maher, who successfully argued the case before the Second Circuit and who is an accomplished appellate advocate.  This rate is again well within the market rate for services performed by attorneys with Mr. Maher's level of experience in similar cases.  Goldstein Decl., ¶ 5; Hoskins Decl., ¶ 4; Maher Decl., ¶ 9.

Plaintiffs would recover attorneys' fees only if they were successful; nonetheless, plaintiffs do not seek a multiplier to the lodestar award on the basis of this contingent risk.  The complexity of this case, its length, and the necessity for its resolution by the United States Supreme Court might well justify an enhancement to the lodestar.  *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986).  Plaintiffs nonetheless do not seek to recover such an enhancement.  Plaintiffs finally do not seek to recover substantial hours spent by several associates and paralegals, nor have they sought recovery of a plethora of hours devoted to the prosecution of claims on behalf of the releasers.

Plaintiffs instead seek recovery of solely their lodestar amount, determined as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Robert Jaffe | 3209.50 | $400.00 | $1,283,800.00 |
| Brendan Maher | 1076.10 | $540.00 | $581,094.00 |
| Shaun Martin | 921.80 | $575.00 | $530,035.00 |
| John Strain | 337.60 | $400.00 | $135,040.00 |
| Peter Stris | 1012.00 | $575.00 | $581,900.00 |
| Mark Watson | 1822.50 | $325.00 | $592,312.50 |
| Beach Wires | 700.25 | $225.00 | $157,556.25 |
| Amber Ziegler | 166.10 | $225.00 | $37,372.50 |
| Total Fees | | | $3,899,110.25 |

Such a lodestar award would be appropriate and equitable to compensate plaintiffs and their counsel for the thirteen years they have invested in this lengthy, complex and hard-fought litigation.

C. The *Chambless* Factors Favor A Lodestar Fee Award.

Prior to the Supreme Court's 2010 decision in *Hardt*, the Second Circuit required district courts to assess the five factors articulated in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869 (2nd Cir. 1987), in deciding whether to award attorneys' fees in ERISA cases. The five *Chambless* factors are: "(1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances; (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on

a group of pension plan participants." *Id*. at 871.  "Although a court had to consider all five factors, it was not necessary for a party to prevail on each in order to recover an attorneys' fee award." *Taafe v. Life Ins. Co.*, 769 F. Supp. 2d 530, 539 (S.D.N.Y. 2011).

It is doubtful that the *Chambless* factors have survived the Supreme Court's holding in *Hardt*.  The Supreme Court expressly held therein that "because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 130 S.Ct. at 2158.  Given this holding, post-*Hardt* cases routinely hold held that district courts in ERISA cases need not address the *Chambless* factors, and instead properly may award fees purely on the basis of the "some degree of success" test.  *See, e.g.*, *Taafe*, 769 F. Supp. 2d at 539 ("As the Supreme Court made clear in *Hardt*, that ["some degree of success"] is all a fee claimant must show to be eligible to collect attorneys' fees. Accordingly, this Court need not address the five *Chambless* factors.").

Plaintiffs will nonetheless briefly address these factors, as they highlight the equitable nature of a full award of lodestar fees in the present case.  The first – the degree of Xerox's culpability or bad faith – is strong.  Defendants were fiduciaries.  As both this Court and the Second Circuit have held,

defendants acted arbitrarily and capriciously by applying an illegal phantom offset to reduce the pensions of Xerox employees by tens of millions of dollars.   This conduct was illegal, and violated federal law even after substantial deference was applied to their conduct.

"A defendant is 'culpable' under *Chambless* where it 'violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate." *Trustees of the Road Carriers Local 707 Welfare Fund v. Goldberg*, 2009 WL 3497493, *9 (S.D.N.Y. Oct. 28, 2009) (quoting *Salovaara v. Eckert*, 222 F.3d 19, 28 (2nd Cir. 2000) (same)).   Defendants indisputably did so.   Moreover, defendants were one vote in the Supreme Court away from a holding that they did so twice.

The second factor -- "the ability of the offending party to satisfy an award of attorney's fees" – strongly favors an award of attorneys' fees as well.   As this court determined in *Frommert v. Conkright*, 2007 U.S. Dist. LEXIS 15370 (W.D.N.Y. Mar. 6, 2007):   "Defendants have made more than a sufficient showing that the Xerox Corporation Retirement Income Guarantee Plan has ample assets and is fully capable of paying any judgment entered in this case."

Third, an award of attorneys' fees would deter similar conduct by other corporate defendants and would help to protect pension benefits accrued by

long term employees.  Defendants reduced employee benefits by inventing an illegal phantom account, an account that entirely eliminated the pensions of a large class of employees.  Xerox may well end up benefitting from this illegal misconduct, even after an award of attorneys' fees, if they prevail on their stubborn assertion that every Xerox employee other than the plaintiffs here is barred by the statute of limitations from recovering the pensions to which federal law entitles them.  An award of substantial attorneys' fees would assist to deter similar cost-benefit misconduct by other defendants.

Fourth, the relative merits weigh strongly in favor of plaintiffs.  Xerox was found to have illegally violated ERISA even after deference was applied.  Indeed, absent such deference, as both this Court and the Second Circuit found, Xerox would have violated ERISA twice.  Plaintiffs should not be forced to incur legal fees out of their own heavily reduced pensions as a result of defendants' misconduct.

Finally, the actions of plaintiffs and their counsel in this action have conferred a substantial benefit on many similarly situated persons.  This Court has already observed that "the rulings contained in the Second Circuit decision and in this Decision and Order do seem applicable to all Xerox employees who are similarly situated to the named plaintiffs." *Frommert v. Conkright*, 472 F. Supp. 2d 452, 465 (W.D.N.Y. 2007).

All five factors thus favor an award of attorneys' fees in this action, even without the more generous "some degree of success" standard articulated in *Hardt*. Plaintiffs should accordingly recover the full amount of their lodestar fees in this action.

D. Plaintiffs Are Entitled to Recover Their Costs And Expenses.

Plaintiffs have incurred substantial out-of-pocket costs during the thirteen-year history of this litigation. Pursuant to 29 U.S.C. § 1132(g) and Fed. R. Civ. P. 54(d), plaintiffs are entitled to recover these expenses, which are direct costs of this litigation and normally charged by counsel to their paying clients. These recoverable costs are:

| | |
|---|---|
| Brief Printing | $11,864.14 |
| Conference Call Fees | $4,967.78 |
| Copying | $11,195.15 |
| Expert Fees | $43,917.36 |
| Filing Fees | $2,596.00 |
| Lexis & Westlaw | $8,788.21 |
| Postage & Courier | $5,233.50 |
| Telephone & Telefax | $1,250.13 |
| Transcripts & PACER | $2,562.70 |
| Travel & Lodging | $28,689.69 |
| | |
| Total | $121,064.66 |

Martin Decl., ¶ 8.

Conclusion

Plaintiffs and their counsel have for over a decade waged a battle against a supremely strong and well-funded adversary.  Xerox violated ERISA.  It illegally reduced its employees' pensions by millions of dollars.  Plaintiffs have obtained a final judgment in their favor that requires Xerox to refund these illegally-obtained proceeds.  This obviously "some degree of success" in the suit, and authorizes an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g).

Neither employees nor their counsel will be willing to challenge violations of ERISA if they face a serious risk that they will be forced to spend over a decade in litigation, spend millions of dollars in attorney's fees (and over $100,000 in out-of-pocket costs), and not recover such expenses *even if they prevail*.  Nor should employees or their counsel be forced to pay these sums out of their own pocket.

"Section 1132(g) exists so that a successful ERISA participant need not use her benefits award to pay her attorneys' fees."  *Nehas v. Continental Cas. Co.*, 2010 WL 2176067, *5 (D. Hawai'i May 26, 2010).  Plaintiffs should accordingly be awarded their lodestar attorneys' fees ($3,899,110.25) and expenses ($121,064.66) in this action.

DATED:  December 28, 2011 /s/ Peter K. Stris, Esq.
 Attorney for Plaintiffs
 Stris Maher LLP
 19210 S. Vermont Ave #E
 Gardena, CA  90248
 424/212-7090
 peter.stris@strismaher.com

## PROOF OF SERVICE

I, Shaun P. Martin, hereby certify under penalty of perjury that on December 30, 2011, I served a copy of

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

via e-mail and U.S. mail to:

Robert Wick, Esq., Covington & Burling LLP, 1201 Pennsylvania Avenue NW, Washington, DC 20004 (counsel for defendants) at rwick@cov.com.

Margaret Clemens, Esq., Littler Mendelson PC, 400 Linden Oaks #110, Rochester, NY 14625 (counsel for defendants) as mclemens@littler.com.

I further certify that on December 30, 2011, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then notify the above-mentioned participants in the case.

DATED: December 30, 2011                    /s/ Shaun P. Martin, Esq.