UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL J. FROMMERT, et al.,

                              Plaintiffs,

                                                          <u>ORDER</u>

                                                          00-CV-6311L

           v.

SALLY L. CONKRIGHT, et al.,

                              Defendants.
_____

       In this lengthy action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, this Court entered its final decision on remand from the Second Circuit on January 5, 2016. The Court ordered an equitable remedy for Xerox's failure to provide adequate notice to Plan participants.

       The Court having issued that decision, a few ancillary matters remain, including determining whether prejudgment interest should be awarded and whether plaintiffs are entitled an award of attorney's fees pursuant to ERISA's fee-shifting statute, 29 U.S.C. § 1132(g)(1).

       Relative to the attorney's fee issue, both parties submitted memoranda around the time when the motion for fees was originally filed on December 30, 2011 (Dkt. #241), and

1

supplemental memoranda in 2016 (Dkt. Nos. 286, 294, 296), subsequent to my January 5, 2016 final decision on remand.

Defendant has challenged virtually every aspect of plaintiffs' application for fees, contending that plaintiffs are not entitled to any award at all, and that even if the Court were to grant an award, the amount sought by plaintiffs should be drastically reduced from what they have requested.

One aspect of defendants' argument, in that regard, is that plaintiffs' fee request is unreasonable because the hourly rates sought exceed those typically awarded, or charged, here in the Western District of New York, and that the hours claimed are excessive and unreasonable. Plaintiffs seek fees based on hourly rates ranging from $250 to $675 per hour. *See* Dkt. #286 at 5. Defendants contend that to the extent that the Court awards fees, it should award no more than $300 per hour for partners and $200 for associates.

The tests for determining whether to award fees under ERISA, and if so in what amount, are well established. A court "'in its discretion' may award fees and costs 'to either party' as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Std. Life Ins. Co.,* 560 U.S. 242, 245 (2010).

If the court decides to award fees, the court must then determine what is a fair and reasonable fee, in light of all the facts and circumstances surrounding the history, nature and prosecution of the action. "Both [the Second Circuit] and the Supreme Court have held that the lodestar--the product of a reasonable hourly rate and the reasonable number of hours required by the case--creates a 'presumptively reasonable fee.'" *Dunda v. Aetna Life Ins. Co.*, No. 15-CV-

6232, 2016 WL 4831962, at *3 (W.D.N.Y. Sept. 15, 2016) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (additional citations omitted).

In their most recent reply (Dkt. #296), plaintiffs challenge defendants' argument that plaintiffs are entitled to receive at most $300 an hour for work performed. Plaintiffs make several points, one of which is that Xerox's attorneys have neglected or refused to disclose their own rates and compensation for the work they have performed in defending the action over the long history of this case. Plaintiffs contend that the rates charged by the several defense firms that have worked on the case--Nixon Peabody, Littler Mendelson, and Covington & Burling--far exceed the $300 per hour rate Xerox contends is the proper top rate for plaintiffs' attorneys. *See* Dkt. #296 at 12-14.

Among other things, plaintiffs point out that while defendants chide plaintiffs for utilizing counsel from outside the Western District of New York, Xerox did precisely the same thing, hiring a prestigious Washington, D.C. firm, Covington & Burling, to represent Xerox before the Second Circuit and the United States Supreme Court. In sum, plaintiffs argue that the fees expended by Xerox are at rates double or triple what the defendant now claims is a reasonable fee for plaintiffs' counsel.

In support of their argument, plaintiffs rely, in part, on information gleaned from an unrelated case in involving American Airlines' bankruptcy proceedings, *see* Dkt. #296 at 15, where Littler Mendelson charged fees ranging from $275 to $690 per hour for services rendered in 2013. Plaintiffs also rely on data published by the *National Law Journal* in 2014, indicating that Littler Mendelson had told the *National Law Journal* that the average billing rate of its partners was $550 per hour, with some partners charging as much as $615 per hour. In that same

survey, Covington & Burling stated that its average rate for partners was $780 per hour. *See id.* at 13 and n.2. Plaintiffs suggest that the Court should consider this public disclosure of rates typically charged by the defendants' firms in this case, and that this information should be considered when determining the reasonable fee payable to plaintiffs.

This Court has recognized that the amount of fees paid by defendants does not necessarily provide a precise guide for what is reasonable for plaintiffs' counsel to receive. *See Costa v. Sears Home Improvement Products, Inc.*, No. 12-CV-6235, 2016 WL 1569213, at *4 (W.D.N.Y. Apr. 18, 2016); *Mendez v. Radec Corp.*, 818 F.Supp.2d 667, 668 (W.D.N.Y. 2011). *See also Marks Constr. Co. v. Huntington Nat'l Bank*, No. 05CV73, 2010 WL 1836785, at *2-*3 (N.D.W.Va. May 5, 2010) (collecting cases).

But it can hardly be gainsaid, particularly in the context of this case, that this information is *relevant* to the issues now before the Court. Relevant evidence is broadly defined in Fed. R. Evid. 401 as that which has "any tendency" to make a fact more or less probable, if that fact "is of consequence" to a determination of the issue in question.

Surely, the rates charged by defendants' counsel to their client meet that liberal test, especially given the nature and history of this case. This litigation has been exceedingly lengthy, involving several trips to the Court of Appeals for the Second Circuit and an argument before, and a decision by, the United States Supreme Court, which resulted in a 5-3 decision reversing the Second Circuit, which required further proceedings on remand.

To say that this case has been hard-fought would be an understatement. In light of the history of this case, defendants' present assertion that this case is not "particularly complex," *see*

4

Def. Mem. (Dkt. #294) at 18, is truly remarkable. Assuming the truth of that statement, one shudders to think how the case might have unfolded if it *had* been "particularly complex."

It does not appear to be unreasonable for plaintiffs to have used a "national" firm with particular experience in ERISA litigation, considering the issues involved and the legal expertise arrayed against them on the other side. Plaintiffs contend that they sought Rochester-area lawyers, and that not one attorney or firm was willing to take their case. Dkt. #296 at 11.

As noted above, there is a split of authority among reported cases addressing the relevance of rates charged by a defendant, in determining the proper amount of a plaintiff's attorney's fee. The issue often comes up in the context of a discovery dispute involving a plaintiff's request for such information.

It is difficult, then, to find an analogous case that the Court might use as a guide for determining reasonable attorney's fees. But this case itself presents one useful comparison: what fees did defendants' several law firms charge Xerox?

Whatever might be the case in another action, because of the unique and long history of this case, I believe that the rates and fees charged and paid by defendants to their several law firms are clearly relevant and would be helpful to this Court in determining the amount of fees that should be awarded to plaintiffs' counsel. Again, the Court is not suggesting that there must be a dollar-for-dollar equivalence, but the information would still be relevant. And by providing such information, defendants would not abandon the positions they have taken in this action, or concede any entitlement of plaintiffs to any award of fees.

As the record now stands, what has been presented to the Court by plaintiffs includes a report by the *National Law Journal* concerning fees billed by the largest law firms in the country. This is a well-known publication that is recognized throughout the legal profession.

Plaintiffs suggest that this Court should use those numbers in assessing defendants' present argument that plaintiffs' fees are excessive and unreasonable. The Court sees no reason to ignore those published rates, but the best evidence would be for Xerox's counsel, as officers of the Court, to disclose to the Court the rates and fees charged by defendants' counsel in this case, at least for the past ten years. That "best evidence" would demonstrate whether the published rates in the *National Law Journal* were accurate or not. The materials should be submitted under seal, only for use in this litigation.

In ordering this disclosure, the Court notes that information regarding attorney's fees and fee arrangements is generally not privileged. *See*, e.g., I*n re Grand Jury Subpoena (Reyes-Requena)*, 926 F.2d 1423, 1431 (5th Cir. 1991); *In re Grand Jury Proceeding (Cherney)*, 898 F.2d 565, 567 (7th Cir. 1990); *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 496 (9th Cir. 1986); *Brown v. Walsh & Kelly, Inc.*, No. 11-CV-34, 2012 WL 1831545, at *2 (N.D.Ind. May 18, 2012); *Stopka v. Am. Family Mut. Ins. Co.*, 816 F.Supp.2d 516, 532–533 (N.D.Ill. 2011).

So, I give defendants the opportunity to provide this information, as relevant evidence to assist the Court in its appropriate inquiry under the ERISA fee-shifting statute. If Xerox, for whatever reason, chooses not to provide this information, the Court may simply proceed with the evidence that has been presented thus far, coupled with the Court's own understanding of legal billing rates based on its thirty years' experience in dealing with such issues. *See Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (court may rely on its "own

familiarity with the rates prevailing in the district" in determining a reasonable hourly rate); *Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (district judge may rely in part on the judge's own knowledge of private firm hourly rates in the community).

The requested information should be transmitted to the Court within fifteen days, as set forth in the Conclusion of this Order.

## CONCLUSION

Defendants are hereby directed to respond to this Order within fifteen (15) days of the date of issuance of this Order.

The billing information, as set forth above, may be filed under seal. Any other response must be publicly filed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 19, 2016.