UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL J. FROMMERT, et al.,

                            Plaintiffs,

                                                                                                   DECISION and ORDER

                  -vs-                                                                                     00-CV-6311L

LAWRENCE BECKER
Xerox Corporation Plan Administrators, et al.,

                            Defendants.
_____

       In this longstanding case, plaintiffs seek pension benefits, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*, from defendants Xerox Corporation ("Xerox"), the Xerox Corporation Retirement Income Guarantee Plan ("Plan"), and the Plan administrator. For the purposes of this Decision and Order, familiarity with the factual background of this case, which has been recited in several reported decisions of this Court, the Court of Appeals for the Second Circuit, and the United States Supreme Court, is assumed.

       On January 5, 2016, the Court issued a final Decision and Order ("January Order"), pursuant to a prior remand from the Second Circuit, directing defendants to "recalculate and pay plaintiffs' retirement benefits, treating plaintiffs' second periods of employment with Xerox as if plaintiffs had been newly hired and without regard for their prior periods of employment." 153 F.Supp.3d 599, 616. The Court also directed Xerox to "take immediate steps to recalculate and pay currently retired plaintiffs retroactively for the difference in benefits that would have been awarded when plaintiffs retired from Xerox after the second period of employment, had the protocol and procedures set forth in this Decision been utilized at that time, rather than the formula previously utilized by Xerox ... ." *Id.* at 616-17.

       Based on that Decision and Order, plaintiffs have now moved for an award of

prejudgment interest. Specifically, plaintiffs request an award of prejudgment interest at the New York statutory rate of 9%, and an additional lump-sum payment of 25% on the amounts awarded pursuant to the Court's January Order. For the reasons that follow, plaintiffs' motion is granted in part, and denied in part.

**DISCUSSION**

**I. Prejudgment Interest in ERISA Cases**

"In a suit to enforce a right under ERISA, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." *Jones v. UNUM Life Ins. Co. of America*, 223 F.3d 130, 139 (2d Cir. 2000). Such an award is particularly committed to the district court's discretion where the underlying relief is equitable in nature, as it generally is in cases brought under ERISA. *See Murphy v. First Unum Life Ins. Co.*, No. 15-CV-820, 2016 WL 526243, at *4 (E.D.N.Y. Feb. 9, 2016) ("Relief sought pursuant to ERISA is equitable in nature"). *See also Rhodes v. Davis*, 628 Fed.Appx. 787, 792-93 (2d Cir. 2015) (while prejudgment interest is generally mandatory in breach of contract actions, it is discretionary where the relief granted is equitable); *Novella v. Westchester County*, 661 F.3d 128, 150 n.25 (2d Cir. 2011) (noting that courts in ERISA cases can award prejudgment interest "as part of their 'wide discretion in fashioning equitable relief' ") (quoting *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984)).

The purpose of prejudgment interest is "to fully compensate the wronged party for the actual damages suffered, *i.e.*, to make him whole." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 48, 54 (2d Cir. 2009). *See also Augustin v. Jablonski*, 819 F.Supp.2d 153, 178 (E.D.N.Y. 2011) ("The underlying purpose of prejudgment interest ... is the need to fully compensate the wronged party for the actual damages suffered, *i.e.*, to make him whole") (internal quotes omitted). In fact, "[a]s the Supreme Court has explained, 'a monetary award does *not* fully

compensate for an injury *unless it includes an interest component*.'" *Slupinski*, 554 F.3d at 54 (quoting *Kansas v. Colorado*, 533 U.S. 1, 10 (2001)) (alterations in original).

"In exercising such discretion, the court is to take into consideration '(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'" *Jones*, 223 F.3d at 139 (quoting *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)).

**II. Application to this Case**

As the Court made clear in the January Order, the remedy that the Court imposed in that order was equitable in nature. The Court found that "defendants' notice violations justify the imposition of an equitable remedy, principally under a theory of contract reformation." 153 F.Supp.3d at 615. The Court further stated that there was "no need for this Court to analyze and consider Xerox's latest interpretation of the Plan." *Id.* at 605. The Court concluded that "defendants' notice violations justify the imposition of an equitable remedy[,] ... and that the appropriate equitable remedy is to recalculate plaintiffs' benefits, treating plaintiffs upon their re-employment with Xerox as if they had been newly hired, with no offset whatsoever." *Id.*

It is also plain from that decision that the Court's intent was to make plaintiffs whole, in the sense that they should be paid whatever amounts are necessary to put them in the same position today that they would be in, had they timely received the benefits due them in the first place. That is why the Court not only directed defendants to "immediately recalculate and pay plaintiffs prospectively" corrected benefits, but also to "take immediate steps to recalculate and pay currently retired plaintiffs retroactively for the difference in benefits that would have been awarded when plaintiffs retired from Xerox after the second period of employment, had the protocol and procedures set forth in this Decision been utilized at that time, rather than the formula previously utilized by Xerox using the so-called phantom account, or any other

procedure previously used by Xerox." 153 F.Supp.3d at 617.  To the extent that an award of prejudgment interest would make plaintiffs whole, then, such an award is appropriate here.

Defendants argue that plaintiffs' motion for prejudgment interest is time-barred, and that plaintiffs have effectively waived any claim to prejudgment interest, by not timely moving for such relief sooner.  I am not persuaded by those arguments.

As anyone with even a cursory familiarity with this case will be aware, it has a lengthy, tortuous history.  At one point, it appears that plaintiffs did choose to hold off on seeking prejudgment interest, for strategic reasons.  Plaintiffs' former attorney, the late Robert Jaffe, stated in an affidavit that he submitted to the Court of Appeals in 2007 that "plaintiffs did not raise the issue of pre-judgment interest" in the wake of this Court's January 24, 2007 Decision and Order (which granted plaintiffs certain relief, *see* 472 F.Supp.2d 452), because he did not want to run the risk that the case would be "remanded back to the district court to determine whether there should be an interest factor added to the payment awarded to them which would possibly delay the case for another year to then have the defendants appeal the district court's ruling to further delay payment to the plaintiffs ... ."  (Dkt. #185-3 at 6.)

The subsequent history of this case, however, includes appellate decisions by the Second Circuit and the Supreme Court, which variously affirmed, reversed, vacated and remanded lower court decisions, as well as further decisions by this Court.  For that matter, this Court's January 2007 Decision and Order was vacated in part by the Second Circuit, whose decision doing so was reversed by the Supreme Court.  In light of that long and convoluted history, I do not view plaintiffs' decision in 2007 not to seek prejudgment interest at that time as giving up any claim to prejudgment interest, ever.  The legal landscape of this case has shifted considerably over the years, and the basis for plaintiffs' claim to prejudgment interest has shifted with it.[1]

---

[1] I also note that plaintiffs filed a motion for various relief, including prejudgment interest, in April 2009 (Dkt. #181).  Defendants opposed that motion in part on the same grounds that they raise now, *i.e.*, that it was untimely and that plaintiffs had waived any claim to prejudgment interest.  *See* Dkt. #185 at 12-17.  The Court denied plaintiffs' motion on November 17, 2011, on the ground that it had been mooted by intervening events, particularly the Supreme Court's

For similar reasons, I disagree with defendants' assertion that plaintiffs' motion is time-barred. Defendants premise that argument on their assertions that plaintiffs' request for prejudgment interest is in effect a motion to alter or amend a judgment, pursuant to Fed. R. Civ. P. 59(e), which must be brought within 28 days after the entry of the judgment at issue, and that the judgment at issue in this case is this Court's January 2007 Decision and Order. *See* Def. Mem. (Dkt. #290) at 9.

Assuming *arguendo* that plaintiffs' request amounts to a Rule 59(e) motion, *see Delville v. Firmenich Inc.*, 23 F.Supp.3d 414, 423 n.6 (S.D.N.Y. 2014) ("A motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) is the appropriate procedural mechanism for seeking prejudgment interest") (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989)), I do not accept defendants' contention that the relevant judgment is the Court's January 2007 Decision and Order. That decision has effectively been vacated. *See* Decision and Order, July 29, 2016 (Dkt. #306) at 7 (stating that this Court's 2011 Decision "effectively rendered the 2007 Decision a nullity"). For that matter, even this Court's subsequent 2011 Decision was vacated and remanded by the Court of Appeals. *See Frommert*, 153 F.Supp.3d at 603 (citing *Frommert v. Conkright*, 738 F.3d 522 (2d Cir. 2013)).

Thus, the most recent relevant decision is this Court's January 5, 2016 Order. That is now the controlling decision and directive with respect to the relief that must be afforded to the plaintiffs. Plaintiffs moved for prejudgment interest on January 25, well within the 28-day limit of Rule 59(e).

Timeliness issues aside, defendants contend that many plaintiffs are not entitled to any prejudgment interest because they have already received more than what they are entitled to.

In support of that argument, and in response to a recent inquiry by the Court, defendants have submitted evidence showing the amounts that various plaintiffs have been paid to date. It

---

decision. *See* 825 F.Supp.2d 433, 450. That decision was in turn vacated by the Second Circuit, 738 F.3d 522 (2d Cir. 2013). As stated, this case has had a tortuous history.

appears that 23 plaintiffs elected to receive benefits in 2009, using what has come to be referred to as the "*Layaou*" method or offset, "so-named because the same offset was used in an earlier decision interpreting the Xerox Plan." 153 F.Supp.3d at 613 (citing *Frommert*, 738 F.3d at 528).

Defendants contend that all of those plaintiffs were "overpaid," in the sense that they were paid more than they would have been due under the "new hire" remedy imposed by this Court in its January Order. On July 29, 2016, the Court denied defendants' motion for an order directing the plaintiffs in question to pay back to the Plan those "excess" benefits. (Dkt. #306.)

Defendants also state that 47 plaintiffs retired and accepted distributions calculated using the Plan administrator's approach, on dates between June 22, 2009 and January 15, 2015. Defendants concede that in general, those plaintiffs received less than they would have under the Court's "new hire" remedy, as set forth in the January Order. *See* Dkt. #316 and #290. An additional 15 plaintiffs were still employed by Xerox at the time of the January Decision. Several of those plaintiffs have since retired from Xerox.

Having reviewed the evidence and considered the equities here, the Court concludes that any plaintiffs who have taken a distribution of benefits, who received an amount equal to or greater than what they would have been due under the Court's "new hire" remedy, as set forth in the January Decision, are not entitled to prejudgment interest. But to the extent that any plaintiff who has taken a distribution of benefits under the Plan received less than would have been due under the Court's new-hire remedy, that plaintiff should receive prejudgment interest on the amount of the shortfall, calculated from the date of his or her distribution up to the date of the judgment, January 5, 2016.

This result is consistent with, and furthers, the purpose of prejudgment interest, which as stated is to fully compensate the injured party for the damages suffered. *See Klimbach v. Spherion Corp.*, 467 F.Supp.2d 323, 334 (W.D.N.Y. 2006) (noting that an award of "prejudgment interest ... serves ERISA's remedial objectives by making a participant whole for the period during which the fiduciary withholds money legally due") (citing *Diduck v. Kaszycki*

*& Sons Contractors, Inc.*, 974 F.2d 270, 286 (2d Cir. 1992), *abrogated on other grounds by Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2d Cir. 2003)).

The Court must also decide the appropriate rate of interest. Plaintiffs request the Court to apply New York's statutory prejudgment interest rate of 9%. *See* N.Y. C.P.L.R. §§ 5000-5004. Defendants argue that if the Court does award prejudgment interest, it should apply the federal post-judgment interest rate under 28 U.S.C. § 1961. That rate, which is tied to the rate of "the weekly average 1-year constant maturity Treasury yield," *id.*, has varied over the years, but historically is has been relatively low. As of October 14, 2016, that rate stood at 0.66%. *See* https://www.federalreserve.gov/datadownload/.

The Court of Appeals has ruled that the rate used to calculate prejudgment interest is a matter "confided to the district court's broad discretion ... ." *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995). Exercising that discretion, and bearing in mind the compensatory purpose of prejudgment interest, I find that neither the New York statutory rate nor the federal post-judgment rate would equitably further that purpose. The New York rate has not changed since 1981, when interest rates in general were considerably higher than they are today. During that year, the federal prime rate remained a few percentage points shy of its all-time high of 21.50%, set on December 19, 1980. From 1990 on, it has never exceeded 10%.

The federal rate, in contrast, is too low to effectively make plaintiffs whole for the deprivation of funds to which they were legally entitled. The rate of return on Treasury securities reflects returns on monies loaned to the government. But as several courts, including the Second Circuit, have recognized, "[i]t would be well within the discretion of the district court to take into account the rate at which such a plaintiff would have paid to *borrow* money rather than the rate at which [the plaintiff] would have *lent* it to the government." *Jones*, 223 F.3d at 140 (emphases added). *See also Maya Special Maritime Enterprise v. Tug M.L. Crochet*, No. 13-CV-1871, 2016 WL 5243085, at *2 (S.D.Tex. Sept. 22, 2016) ("Courts have previously considered cost of

borrowing when determining the interest rate") (citing *Complaint of M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1991)).  A plaintiff who was wrongfully deprived of funds for a period of time, but who wanted or needed to make a major purchase, might have been forced to borrow money at rates well above the post-judgment interest rate.

Using either the New York or federal rate, then, could result in a windfall for one side or the other.  *See Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675, 686-87 (6th Cir. 2013) (finding that to award prejudgment interest at federal statutory post-judgment interest rate of 0.12% would allow defendants to "be rewarded for their own wrongdoing"); *American Underground Engineering, Inc. v. City of Syracuse*, No. 00-CV-278, 2012 WL 3202853, at *5 (N.D.N.Y. Aug. 2, 2012) ("The Court finds that the nine percent prejudgment interest rate would be unreasonably high as it would produce a windfall for Plaintiff").

Taking these considerations into account, I find that the federal prime rate should be applied to plaintiffs' judgment as an award of prejudgment interest.  The prime rate generally runs several points higher than the federal funds rate set by the Federal Reserve.  Since December 17, 2015, for example, the prime rate as reported by the Federal Reserve is 3.5%, while the federal funds rate is 0.41%.  *See* http://www.federalreserve.gov/releases/h15/.  I conclude that use of the prime rate strikes an appropriate balance, and will fairly compensate plaintiffs for the period of time during which they were improperly denied the use of the funds to which they were entitled.  *See Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria*, 603 Fed.Appx. 1, 5 (D.C. Cir. 2015) ("This court has repeatedly concluded that the use of the prime rate in the award of prejudgment interest reflects an appropriate exercise of the district court's discretion").

The prime rate has not typically had dramatic swings over the years, but it has changed from time to time.  From 2000 to the present, it has been as high as 9.5%, and as low as 3.25%.  *See* http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm.  But those changes have occurred relatively infrequently, and gradually.  Typically, the prime rate has gone

up or down by a quarter of a percentage point, usually after a period of some months. After its most recent change, in December 2015, to 3.5%, the prime rate had been at 3.25% for seven years, since December 2008. But changes have taken place, as stated, and sometimes over shorter intervals, in response to changed economic conditions. For example, as of January 22, 2008, the rate was 6.5%, and eight days later it dropped to 6%.

To use the prime rate, then, it would make little sense for the Court simply to take the current rate, and apply it across the board. Doing so would not reflect the historical changes in the rate.

Furthermore, this is not a single-plaintiff case, involving one discrete time period. This action involves multiple plaintiffs, and the relevant dates of their loss, *i.e.*, the period during which they received lower benefits than what they were entitled to, vary from one plaintiff to another.

The Court must therefore also determine the relevant dates for calculating prejudgment interest. As explained above, the Court directed defendants to recalculate and pay plaintiffs additional benefits on January 5, 2016. That is the date on which the Court fixed the terms of the remedy to be imposed, and directed defendants to implement that remedy. As such, it is the operative date from which to calculate, retrospectively, the Court's award of prejudgment interest.

The "beginning" date of the prejudgment interest award will necessarily vary from plaintiff to plaintiff. I find that each plaintiff should receive interest from the date of his or her distribution of Plan benefits, up to the date of this Court's January Order, *i.e.*, January 5, 2016, to the extent necessary to make up any shortfall in benefits as compared to the Court's new-hire remedy.[2]

---

[2]The Court also notes that its determination that January 5, 2016 is the relevant "judgment" date for purposes of prejudgment interest will not prejudice defendants, with respect to their time to appeal. *See Jones*, 223 F.3d at 136-38 (post-judgment motion for prejudgment interest extends opponent's time to appeal).

Determining both the interest rate and the relevant time period, and calculating the amounts due, should be a relatively simple matter, however. The dates on which the plaintiffs took distributions are a matter of record, as is the historical prime rate. The Court will leave it to the parties to arrive at the correct figures for the individual plaintiffs, as set forth in the Conclusion of this Decision and Order.

One additional matter must be addressed. Plaintiffs have also requested the Court to order, in addition to prejudgment interest, that they be paid a lump-sum payment in the amount of 25% of their gross "new hire" benefits. Plaintiffs offer little support for such an award, other than a recitation of the hardships suffered by some plaintiffs as a result of having been denied the full amount of retirement benefits to which they were entitled.

While the Court does not mean to minimize those hardships, I believe, for the reasons stated above, that the fairest and best way to compensate plaintiffs is to award prejudgment interest. I see no sound justification for awarding an additional sum, set at some arbitrarily chosen amount, on top of that prejudgment interest award. Again, the Court's aim is to make the plaintiffs whole, in a monetary sense, not to impose some punitive award or to attempt to quantify and award damages for what amounts to plaintiffs' pain and suffering.

## CONCLUSION

Plaintiffs' motion for prejudgment interest (Dkt. #284) is granted in part and denied in part. Defendants are hereby directed to pay prejudgment interest to each plaintiff who has taken a distribution of benefits under the Plan, who received less than would have been due under the Court's new-hire remedy imposed on January 5, 2016.

The award should be calculated using the prime interest rate, as published by the Federal Reserve, as to each plaintiff, calculated from the date of the plaintiff's distribution up to January 5, 2016.

In all other respects, plaintiffs' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 3, 2016.