UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAUL J. FROMMERT, et al.,

                         Plaintiffs,

                                                    DECISION AND ORDER

                                                    00-CV-6311L

                    v.

SALLY L. CONKRIGHT, et al.,

                         Defendants.

_____

        The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*,
permits participants or beneficiaries of an ERISA plan to bring a civil action to recover benefits
due to them under the terms of their plan, to enforce their rights under the terms of the plan, or to
clarify their rights to future benefits under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B).
Section 502(g) of ERISA, 29 U.S.C. § 1132(g), also provides that a court in an ERISA case may,
in its discretion, allow "reasonable attorney's fees and costs ... to either party." 29 U.S.C. §
1132(g)(1).

        This case involves a claim for benefits by a group of plaintiffs who work or have worked
for Xerox Corporation. Aside from the general principles cited in the preceding paragraph, little
if anything has *not* been disputed by the parties in this case. That includes plaintiffs' motions for
attorney's fees, which are now before the Court. (Dkt. #241, #327.) The parties disagree about
whether plaintiffs are entitled to *any* award of fees, and if so, about virtually every aspect of how
to calculate an appropriate award.  Plaintiffs seek over $7.6 million in attorney's fees;
defendants contend that plaintiffs should be awarded either no fees at all, or a drastically reduced
sum.

**DISCUSSION**

**I. Attorney's Fee Awards Under ERISA**

ERISA's fee-shifting statute provides that "the court in its discretion may allow a reasonable attorney's fee and costs ... to either party."  29 U.S.C. § 1132(g)(1).  "It is well-established that 'Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights.'"  *Donachie v. Liberty Life Assurance Co. of Boston*, 745 F.3d 41, 45-46 (2d Cir. 2014) (quoting *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009)).  *See also Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288, 298 (2d Cir. 2004) ("'ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights") (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir. 1987), *abrogated on other grounds as stated in Janese v. Fay*, 692 F.3d 221, at 223-27 (2d Cir. 2012)).

In that regard, the Second Circuit has explained that "in light of the ERISA fee provision's 'statutory purpose of vindicating retirement rights,' granting a prevailing plaintiff's request for fees is appropriate absent 'some particular justification for not doing so.'"  *Donachie*, 745 F.3d at 47 (quoting *Locher*, 389 F.3d at 298, and *Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir. 1983)).

The Supreme Court has interpreted § 1132(g)(1) as allowing a court, in its discretion, to award fees and costs to either party, "as long as the fee claimant has achieved 'some degree of success on the merits.'"  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).  As the Supreme Court has put it, an attorney's fee claimant

> does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue.

*Id.* at 255 (internal quotes and alterations omitted).  Thus, where a party has achieved some degree of success on the merits, the Court may conclude that an award of attorney's fees is appropriate.  *Donachie*, 745 F.3d at 46.  *See also Scarangella v. Group Health, Inc.*, 731 F.3d 146, 151, 152 (2d Cir. 2013) (stating that "ERISA does not contain a prevailing party standard and instead provides district courts with broader discretion in determining when and to whom attorney's fees should be awarded," and that "[t]he Supreme Court in *Hardt* appears to have left room for many factual scenarios to satisfy the standard of some success on the merits").

In addition to whether the fee applicant has obtained some degree of success on the merits–which the court *must* consider–the court may also consider the five so-called *Chambless* factors:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Donachie*, 745 F.3d at 46 (citing *Hardt* and *Chambless*).  While the weight to be given to those factors may differ from one case to another, a "court cannot selectively consider some factors while ignoring others." *Id.* at 47.


## II. Application to this Case

## A. Plaintiffs' Entitlement to a Fee Award

Defendants contend that plaintiffs' fee request should be denied in its entirety, or at least drastically reduced as compared to plaintiffs' request.  In their brief (Dkt. #294), defendants contend that "this Court should exclude fees entirely," and that "[o]f the remaining fees sought, this Court should substantially reduce the fees ... ."  It is not clear what they mean by that.  If the Court were to "exclude fees entirely," there would be no "remaining fees" to reduce.

In any event, defendants' assertion that plaintiffs' fee request should be denied outright is plainly wrong.  The law is clear that a fee award is appropriate if the fee applicant has "obtained

some degree of success on the merits ... ." *Hardt*, 560 U.S. at 255.  And there can be no question that plaintiffs in this case have met that standard.  They have obtained "favorable judicial action on the merits."  *Scarangella*, 731 F.3d at 152.

If nothing else, this litigation has established that defendants violated ERISA through their application of the "phantom account" to employees who retired before the existence and operation of that account was fully disclosed in 1998, and that plaintiffs who were adversely affected by that inequitable conduct are entitled to relief.  *See Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) (explaining the details of the phantom account and why it violated ERISA).

Despite all the intervening decisions in this case, that has not changed.  *See Frommert v. Becker*, 153 F.Supp.3d 599, 609-10 (W.D.N.Y. 2016) (explaining why Xerox's continued application of the phantom account was unjustified, and why a remedy was required).  The litigation over the past several years has mostly focused on how best to remedy that violation.  By defendants' own admission, they have paid out some four million dollars to plaintiffs, based on decisions issued by this Court and by the Court of Appeals for the Second Circuit.[1]  This Court's January 5, 2016 Decision and Order directed defendants to recalculate and pay plaintiffs their retirement benefits, in accordance with a formula set forth by the Court.  *See* Dkt. #283.  That directive put plaintiffs in a better position than they would have been, under the phantom-account formula.

It can scarcely be disputed, then, that the parties' relationship has been materially altered, to the benefit of the plaintiffs.  Plaintiffs have "achieved far more than 'trivial success on the merits' or a 'purely procedural victory.'"  *Hardt*, 560 U.S. at 256 (quoting *Ruckelshaus*, 463 U.S. at 688 n.9).  They have received a clear, indisputable, and measurable benefit.

Aside from their blanket assertion that plaintiffs should not be awarded any attorney's fees at all, defendants contend that even if the Court were to award fees, plaintiffs should not get

---

[1]Though defendants later sought to recoup a portion of those monies, this Court denied that request.  See Dkt. #297, #306.

nearly as much of an award as they seek.  In support of that argument, defendants raise a variety of objections to plaintiffs' request.

Defendants contend that plaintiffs should receive no attorney's fees at all for work they performed after 2012, on the ground that plaintiffs achieved no success on the merits during that period.  *See* Def. Mem. (Dkt. #294) at 7-11.  Defendants have apparently backed off their prior contention that plaintiffs should receive no fees for work performed after January 24, 2007, *see* Dkt. #245 at 23-25, but they contend that the Court should reduce those fees, to reflect plaintiffs' alleged lack of success on the merits from that date on.

Defendants also argue that no fees should be awarded for time spent by plaintiffs' former counsel, the late Robert Jaffe, for work that, according to defendants, was not related to this action.  Defendants raise similar arguments concerning work performed by plaintiffs' present counsel, on the ground that much of that work was not performed in connection with this action.  Defendants further argue that plaintiffs' attorney's time records are inadequate, that much of the work for which plaintiffs seek compensation is redundant and excessive, and that the rates sought are excessive and unreasonable.  To put it simply, defendants have raised virtually every objection they can to plaintiffs' motion.

On the whole, defendants' arguments fall short.  With respect to the question of plaintiffs' "success," the Court first addresses the so-called *Hensley* standard.  While it was adopted in the context of attorney's fee claims under the federal civil rights statute, 42 U.S.C. § 1988, the "two-part test from *Hensley*[ *v. Eckerhart*, 461 U.S. 424 (1983)] that courts apply when a plaintiff succeeds on some, but not all of his claims, has been adopted into the ERISA context." *Barnett v. Southern Cal. Edison Co. Long Term Disability Plan*, No. 12-CV-130, 2016 WL 4077721, at *20 (E.D.Cal. July 5, 2016); *accord Caban v. Employee Security Fund of the Electrical Products Industries Pension Plan*, No. 10-CV-389, 2015 WL 7454601, at *6 n.3 (E.D.N.Y. Nov. 23, 2015).  Under that test, the court asks, "First, did the plaintiff[s] fail to prevail on claims that were unrelated to the claims on which [they] succeeded?  Second, did the

plaintiff[s] achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 462 U.S. at 435.

In arguing for a reduction of plaintiffs' fees, defendants are artificially segmenting plaintiffs' claims and arguments, applying hindsight, and ignoring their own role in causing plaintiffs' counsel to expend more time and effort on this litigation. Their arguments are based on an unwarranted isolation of particular arguments and a unreasonably constrained view of the history of this litigation.

With respect to work performed after 2012, the Court notes that this encompassed discovery disputes and attempts by plaintiffs to compel defendants to comply with the directives of this Court and the Court of Appeals, and to implement those directives. That goal was ultimately achieved. To characterize this work as fruitless or a waste of time is simply incorrect.

In part, that also reflects defendants' own actions in this case. Certainly a party has a right to advance any reasonable arguments to defend against claims brought against it. But as this Court has previously observed, over the course of this litigation, defendants have made concessions "generally only when compelled to do so by court decisions ... ." 153 F.Supp.3d at 609-10.

That is not to say that defendants have overstepped the boundaries of what is permissible. The point is, they have mounted a dogged defense–as is their right–throughout this litigation. For them now to argue that it was unreasonable or unproductive for plaintiffs' counsel to take steps to move this litigation along, or to obtain some final relief, in the face of defendants' continued opposition, seems disingenuous at best.

I further disagree with defendants' contention that the Court should exclude a sizeable chunk of the hours claimed on the ground that such work related to other cases. This action is, and always has been, closely related to several other cases involving Xerox's ERISA benefits and the application of the phantom account. *See Clouthier v. Becker*, No. 08-6441, 2016 WL 245157, at *1 (W.D.N.Y. Jan. 21, 2016); *Holland v. Becker*, No. 08-CV-6171, 2013 WL

5786590, at *1-*2 (W.D.N.Y. Oct. 28, 2013).  It would be unrealistic for the Court to attempt to draw clean-cut divisions between these actions, or to completely exclude hours expended that may have had some bearing on related litigation.  That does not mean that plaintiffs' counsel is entitled to a double recovery of fees, but I do not accept defendants' argument that fees should be denied for time spent on this case simply because that work may have borne some relation to another, related case.

While I conclude, on the basis of the *Hardt* "some degree of success" test, that plaintiffs are entitled to an award of attorney's fees, the Court has also taken into account the so-called *Chambless* factors mentioned above.  I find that those factors further support an award of fees here.  This litigation has established that Xerox wrongfully applied the phantom account to plaintiffs; overall, plaintiffs have clearly had the better argument, insofar as the parties' legal positions are concerned.  There is no question that Xerox can satisfy an award of fees, and I believe that an award would serve to deter similar ERISA violations in the future.  Given the history of this case, which has resulted in substantive decisions by several courts, including the United States Supreme Court, *see Conkright v. Frommert*, 559 U.S. 506 (2010), it cannot reasonably be denied that plaintiffs have sought, and have obtained, a resolution of significant issues relating to ERISA participants in general.  In light of these circumstances, it would not be consonant with the liberal construction of § 1132(g)(1) prescribed by the Second Circuit for the Court to deny plaintiffs' motion.

## B. Fee Amount

## 1. General Principles

If the court concludes that a party is entitled to attorney's fees, the court must determine an appropriate fee amount.  The standard benchmark for determining the amount of reasonable attorney's fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which yields a "presumptively reasonable fee."  *Hensley*, 461 U.S. at

433; *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 188-90 (2d Cir. 2008); *Sun v. AAA Venture Capital, Inc.*, No. CV 2015-04325, 2016 WL 5793198, at *11 (E.D.N.Y. Sept. 12, 2016).

The product of reasonably expended hours and a reasonable hourly rate is commonly referred to as the "lodestar figure." *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Valentine v. Aetna Life Ins. Co.*, No. 14-CV-1752, 2016 WL 4544036, at *6 (E.D.N.Y. Aug. 31, 2016). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010) (internal quote omitted)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551 (emphasis in original).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case and the overall result. *See Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994). The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). In undertaking that analysis, the court may exclude compensation for hours expended in pursuit of unsuccessful claims that were "distinct in all respects" from the successful claims. *Hensley*, 461 U.S. at 440. But the court should not attempt to artificially segment the attorneys' work on claims that involved a "common core of fact" and which "were based on related legal theories." *Id.* at 435. The Supreme Court has stated that such cases "cannot be viewed as a series of discrete claims," and that the court should "focus on the ... overall relief obtained by plaintiff[s] in relation to the hours reasonably expended on the litigation." *Id.*

If the claimed hours seem excessive, particularly in light of the results obtained, "[o]ne acceptable method for reducing the billable hours from a fee application ... is for the court to impose an 'across-the-board percentage' cut of the total amount of time claimed." *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at \*7 (E.D.N.Y. July 31, 2015) (citing *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987)).

With respect to the hourly rate, the court should base its award on a reasonable hourly rate, which is "the rate a paying client would be willing to pay ... ." *Arbor Hill*, 522 F.3d at 190. The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing *Blum v. Stenson*, 465 U.S. 886, 894 (1984)).

Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. *See Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005); *Chambless*, 885 F.2d at 1059. The "community" is generally considered to be the district where the district court sits. *See Arbor Hill*, 522 F.3d at 190.

The Second Circuit has also held, however, that the court may award fees at a higher hourly rate that what is typical for the district "upon a showing that the special expertise of counsel from a different district is required." *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 24 (2d Cir. 1983). *See, e.g.*, *Torgeson v. Unum Life Ins. Co. of America*, No. C05-3052, 2007 WL 433540, at \*6 (N.D. Iowa Feb. 5, 2007) (approving a rate higher than typical for the court's district, in part because out-of-town counsel had a "highly specialized knowledge of ERISA law"); *Mogck v. Unum Life Ins. Co. of America*, 289 F.Supp.2d 1181, 1191 (S.D.Cal. 2003) (finding attorneys' rates were reasonable because "ERISA cases involve a national standard").

The Court must, then, determine both that the rates sought and the time spent are reasonable.  Just because counsel claims to charge a certain rate does not necessarily make that rate a reasonable one.

## 2. Plaintiffs' Counsel's Hourly Rates

Plaintiffs seek fees based on hourly rates ranging from $250 to $675 per hour.  *See* Dkt. #286 at 6.  Defendants contend that if the Court awards fees, the Court should award no more than $300 per hour for partners and $200 for associates, which defendants contend are consistent with the range of rates prevailing in the Western District of New York.  Dkt. #294 at 31.

### a. The "Forum Rule"

As stated, courts do often use local rates in setting fee awards.  See, e.g., *In re Eastman Kodak ERISA Litigation*, __ F.Supp.3d __, 2016 WL 5746664 (W.D.N.Y. Oct. 4, 2016).  The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'"  *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).  *See also Farbotko*, 433 F.3d at 209 (court may rely on its "own familiarity with the rates prevailing in the district" in determining a reasonable hourly rate); *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (district judge may rely in part on his own knowledge of private firm hourly rates in the local community).

That rule is not mandatory, however, and there are exceptions to it.  Fees may be awarded at higher out-of-district rates if "a reasonable client would have selected out-of-district counsel because doing so would likely ... produce a substantially better net result."  *Bergerson*, 652 F.3d at 290 (quoting *Simmons*, 575 F.3d at 172).   The party seeking a higher, out-of-district rate bears the burden of overcoming the forum rule by making a particularized showing that objective

factors warranted the use of higher-priced, out-of-town counsel.  *Peacock v. City of Rochester*, No. 13-CV-6046, 2016 WL 4150445, at *6 (W.D.N.Y. Aug. 5, 2016) (citing *Simmons*, 575 F.3d at 176).

In this case, plaintiffs contend that "no lawyers from the Western District of New York have ever been willing to take on this litigation."  Plaintiffs' Reply Brief (Dkt. #296) at 10. Defendants do not appear to challenge that assertion.  Plaintiffs' attorneys over the years have been based in New Jersey, California, Texas and Massachusetts.  Plaintiffs further contend that this case was national in scope and that "[t]he relevant [legal] community is a national one."  *Id.*

As this Court is well aware, this was a relatively complex case.  Contrary to defendants' assertion, it was not a simple, straightforward, garden-variety ERISA action.  If it were, presumably it would have ended years ago, without the necessity of a trip to the United States Supreme Court, as well as multiple appeals and remands.  This action involved numerous plaintiffs, and multiple issues of law that have posed difficult questions for this Court, the Court of Appeals, and the Supreme Court, which itself was divided over the issues before it.[2]

While this action generally involved Rochester-area plaintiffs, there is also some support for plaintiffs' assertion that in certain highly specialized areas of law, such as ERISA, the relevant legal community is national in scope.  *See, e.g., Amos v. PPG Indus., Inc.*, No. 05-cv-70, 2015 WL 4881459, at *9 (S.D.Ohio Aug. 13, 2015) ("In ascertaining the proper 'community,' district courts may look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases") (internal quotes omitted); *Boxell v. Plan for Group Ins. of Verizon Communications, Inc.*, No. 13-CV-089, 2015 WL 4464147, at *9 (N.D.Ind. July 21, 2015) ("ERISA is a specialized field with a limited number of attorneys who specialize in representing plaintiffs seeking disability benefits, and Ms.

---

[2]I also note that Xerox's treatment of prior lump-sum distributions has been the subject of litigation in other circuits as well.  *See, e.g., Miller v. Xerox Corp. Ret. Income Guarantee Plan*, 464 F.3d 871 (9th Cir. 2006); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003).

Boxell has adequately established that there is a national market for the services of those attorneys"). In that regard, I note that plaintiffs' attorney John Strain has represented plaintiffs in other ERISA litigation against Xerox. *See Miller v. Xerox Corp. Ret. Income Guarantee Plan*, 464 F.3d 871, 872 (9th Cir. 2006).

For all these reasons, I find that plaintiffs have demonstrated that the subject matter–ERISA benefits, involving numerous beneficiaries–required special expertise, that it was reasonable for plaintiffs to use out-of-district counsel, and that the hourly rates to be applied here are not strictly bound by what would be typical for counsel from this district.

Defendants' fees are also germane. On October 19, 2016, the Court requested defendants to submit to the Court records reflecting "the rates and fees charged and paid by defendants to their several law firms" that represented them in this case. Dkt. #314 at 5. In that order, the Court recognized that there need not necessarily be "a dollar-for-dollar equivalence" between the two sides' fees, but stated that this information would still be relevant. *Id.*

Defendants have submitted those records. Dkt. #321. In accordance with the Court's order, the records of defense counsel's billing information were filed under seal, although they have been disclosed to plaintiffs' counsel. Plaintiffs have filed a memorandum, also under seal, in response. Dkt. #326.

Bearing in mind that there need not be absolute parity between the fees paid by defendants and the fees sought by plaintiffs, I find that defendants' billing records support the use of rates in excess of what might ordinarily be typical for this district. Without going into detail, suffice it to say that plaintiffs' claimed rates are at least consonant with defense counsel's rates, and fall roughly between the highest and lowest rates charged by defendants' attorneys.

The Court also notes that when this case went to the Supreme Court, defendants, who up to that point had been represented by counsel from this district, retained Covington & Burling, a well-known international law firm, whose attorneys command premium rates. Their rates are considerably higher than the rates charged by defendants' counsel from this district.

Apparently, defendants deemed the prospect of Supreme Court litigation to warrant the added expense of hiring an out-of-district firm, Covington & Burling, at significantly higher rates than would have been charged by in-district counsel.  In light of those facts, it hardly seems reasonable for defendants to object to plaintiffs' use of out-of-town counsel–some of whom have appeared before the Supreme Court in other cases[3]–at higher rates than are typical for this district (albeit still lower than the rates charged by Covington & Burling's senior counsel).


**b. Contemporary or Historical Rates**

One other aspect of plaintiffs' request must be addressed.  Plaintiffs contend that their fee award should be based on "contemporary," *i.e.*, 2016 rates, even for work performed many years ago.  When plaintiffs moved for a fee award in 2011, their claimed hourly rates ranged from $225 to $575 per hour.[4]  *See* Dkt. #240-1 at 20.  Their claimed 2016 rates have escalated, anywhere from $25 to $125 an hour, to a range of $250 to $675 an hour.

Having reviewed plaintiffs' fee application and the documentation submitted in support of that application, I conclude that the 2016 hourly rates sought by plaintiffs are unreasonably high.  I will instead use the 2011 rates, with no increase or upward adjustment.

This Court recently addressed the issue of reasonably hourly rates in the context of an attorney's fee motion in another ERISA case, *In re Eastman Kodak ERISA Litigation*, __ F.Supp.3d __, 2016 WL 5746664 (W.D.N.Y. Oct. 4, 2016).  While that fee motion was based on recovery of a percentage of a common fund, the Court nevertheless performed a lodestar calculation, as a means of assessing the reasonableness of the fee sought.

---

[3]*See, e.g.*, *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008) (Peter Stris and Shaun Martin appearing for petitioner); *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008) (same); *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006) (same).

[4]Due to the various proceedings that followed that motion, the Court reserved decision on the motion, and gave plaintiffs leave to file a supplemental motion for fees in 2016.  See Dkt. #283.

Referencing class counsel's billing rates, which averaged between $550 and $750 an hour for out-of-district counsel, the Court stated, "These rates grossly exceed the typical reasonable hourly rates in this district ... for practitioners of comparable skill and experience in such cases." 2016 WL 5746664, at *3 (citation omitted).  Stating that class counsel had not demonstrated that it was necessary to use out-of-district counsel, the Court applied "reasonable in-district rates" of $325 an hour for partners and other senior counsel and $300 an hour for associates. *Id.* at *4.

As stated, the Court in the instant case will apply out-of-district rates, for the reasons set forth above.  Even making allowances for those factors, however, I believe that the 2011 rates are fully adequate to compensate plaintiffs' attorneys.  The Court cannot simply rubber-stamp plaintiffs' request, and while higher rates may be the norm in some geographical markets, the fact remains that this action was litigated in the Western District of New York.  Plaintiffs may not be strictly limited to local rates, but those rates are not wholly irrelevant to the Court's analysis.  This Court's awards in other cases, and the Court's own familiarity with prevailing rates, still provide at least a rough benchmark for what is appropriate here.

Even in 2016, rates in excess of $500 an hour are quite substantial, and easily exceed what is typical for this district, and likely many other districts as well.  *See Litkofsky v. P & L Acquisitions, LLC*, No. CV 15-5429, 2016 U.S. Dist. LEXIS 111916 at *25 (E.D.N.Y. Aug. 19, 2016) (collecting cases, and nothing that prevailing rates for experienced attorneys in the Eastern District of New York, which includes Long Island and parts of New York City, have in recent years ranged from about $300 to $400 an hour).  As stated, the court should be guided by the fee that the attorney seeking fees "would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue*, 559 U.S. at 553.  *See also Volpe*, 2016 WL 6238525, at *6 (district court should consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case") (quoting *Simmons*,

575 F.3d at 190).  I am not convinced that a reasonable client in this district would have paid the 2016 rates sought by plaintiffs' counsel.

Plaintiffs are correct that courts in this circuit have sometimes used current rates in awarding attorney's fees, to reflect the delay in payment.  *See, e.g., Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) ("The rates used by the court should be current rather than historic hourly rates") (internal quotation marks and citation omitted); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment"); *Balu v. City of New York*, No. 12 Civ. 1071, 2016 WL 884666, at *4 (S.D.N.Y. Mar. 8, 2016).  But that is beside the point.  The Court's use of 2011 rates is not based on a failure to recognize the time value of money, but on the Court's conclusion that those rates, even by 2016 standards, are reasonable and adequate.

### 3. Hours Expended

### a. Robert Jaffe

The other component of the lodestar analysis is the hours for which counsel should be compensated.  In that regard, the Court first addresses the hours claimed for work performed by the late Robert Jaffe.

In June 2009, plaintiffs moved for an award of "interim" attorney's fees.  (Dkt. #186.)[5]  In support of that motion, Jaffe claimed that he had spent 3209.5 hours on this case, for which he sought compensation.  Plaintiffs have submitted time records for the hours claimed in that motion for work performed by certain other attorneys, *see* Dkt. #186-4, #186-5, #240-6, #240-7, but as to Jaffe himself, he stated only that his time records would "be submitted under separate cover" and that they would "be brought up to date through May 31, 2009."  (Dkt. #186-2 at 2).

---

[5]That motion was denied without prejudice to plaintiffs seeking attorney's fees and costs following the entry of a final judgment in this case.  (Dkt. #237.)

Jaffe died in early August 2009, however.  Those time records were never submitted to the Court.  Instead, plaintiffs have submitted evidence based on their investigation of Jaffe's records.  Plaintiffs contend that they "have located sufficient detail" to confirm the accuracy of Jaffe's claim of having spent 3209.5 hours on this case.  *See* Decl. of Amber Ziegler (Dkt. #240-3) ¶ 9.  They have submitted what amounts to a reconstruction of Jaffe's hours, but by plaintiffs' own admission, they have never located contemporaneous records for Jaffe's time.  *Id.* ¶ 19.

Many courts have expressed their strong preference for contemporaneous time records over reconstructed time records.  *See, e.g.*, *Amankwah v. Perez*, No. 16-CV-406, 2016 WL 4250486, at *1 (W.D.Tex. Aug. 9, 2016) (citing *Freiler v. Tangipahoa Bd. of Educ.*, 185 F.3d 337, 348 (5th Cir. 1999)).  "Indeed, under the longstanding rule in the Second Circuit, applications for attorneys' fees must 'normally be disallowed unless accompanied by contemporaneous time records.'"  *R.G. v. Federated Inc.*, No. 14-cv-7734, 2016 WL 3072396, at *2 (S.D.N.Y. May 26, 2016) (quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)).

The Court could, then, deny outright any award for Jaffe's time.  *See, e.g.*, *United Bank Trust, N.A. v. Dingman*, No. 16-CV-1384, 2016 WL 6902480, at *6 (S.D.N.Y. Nov. 22, 2016).  I will not do so, though I will reduce the time claimed.

Robert Jaffe's death was unexpected, but that does not mean that the Court can simply take his claim of 3209.5 hours at face value.  Undoubtedly Jaffe did spend time working on this case.  Plaintiffs are entitled to some award for his time and effort.  But without contemporaneous records, prepared by Jaffe himself, the Court cannot easily determine how those hours were spent, or whether they were reasonably spent.  If Jaffe neglected to prepare and maintain contemporaneous time records, the consequences of that failure should fall on plaintiffs, not defendants.  A substantial reduction must therefore be made.  *See Griffiths v. Jugalkishore*, No. 09-cv-2657, 2010 WL 4359230, at *6-7 (S.D.N.Y. Oct. 14, 2010) (reducing fee by 30% due to absence of contemporaneous time records), *report and recommendation adopted*, 2010 WL

4365552 (S.D.N.Y. Nov. 3, 2010); *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 378-79 (S.D.N.Y. 2010) (same).

Again, there is no dispute that Jaffe did considerable work on this case, and that his efforts contributed to plaintiffs' ultimate success.  I have also taken into account plaintiffs' attempt to reconstruct or retroactively document Jaffe's time.  But given the lack of contemporaneous time records for Jaffe, prepared or attested to by Jaffe himself, the Court will cut his hours by 50%, *i.e.*, to 1604.75 hours.  The Court will award fees for those hours at the rate of $400 an hour, which Jaffe claimed as his "normal billing rate" in 2009, *see* Dkt. #186 ¶ 3(a), #186-2 ¶ 7, which yields a total of $641,900.

### b. Plaintiffs' Other Attorneys

As to the hours claimed by plaintiffs' other attorneys, defendants have raised a host of arguments concerning why they should be reduced or excluded altogether.  Defendants contend that plaintiffs' attorneys' time entries are too vague, and that much of the work claimed by plaintiffs' counsel appears to be redundant.

In general, I am not persuaded by defendants' arguments.  Defendants' assertions about the time entries are, frankly, difficult to understand.  They contend, for example, that an entry on July 19, 2012 by attorney Shaun Martin of 6.2 hours for "Review Xerox Second Circuit brief and research re:  authorities and assertions therein," and an entry by Martin on November 8, 2012 of 6.9 hours for "Review and research Second Circuit panel and prior opinions for argument and prepare outline re:  author-cited materials (4.6); revise oral argument outline and issues/questions/themes (2.3)" are too vague.

It is difficult to imagine how these time entries could reasonably have been much more specific.  Conceivably, Martin could have recorded the number of minutes he spent on each page of defendants' brief, or reading individual Second Circuit decisions.  But that is hardly

reasonable or realistic.  Many of defendants' other objections are in the same vein, and I reject them for the same reasons.

Nor am I persuaded by defendants' argument that plaintiffs' fee award should be reduced to reflect their allegedly limited success.  As mentioned above, defendants contend that plaintiffs should receive no fees at all for work performed after 2012, on the ground that such work did not result in any "success" benefitting the plaintiffs.  Defendants assert that plaintiffs achieved no success in this case following the Second Circuit's December 23, 2013 decision, and that all the briefing leading up to that decision was completed by November 15, 2012.  Def. Mem. (Dkt. #294) at 8.  That contention is based on hindsight and a piecemeal approach that is not warranted either under general principles or the facts of this case.

First, to say that plaintiffs achieved no success after 2012, and therefore should be awarded no fees for post-2012 work, is unconvincing, to say the least.  It was established years ago that Xerox's application of the phantom account violated ERISA.  That it has taken years to arrive at a final remedy is not plaintiffs' or their counsel's fault, nor does it mean that it was unreasonable for plaintiffs' attorneys to continue to put time and effort into this case.  They could hardly have done otherwise.

Defendants' arguments that plaintiffs achieved no "success" with respect to this or that motion are also off the mark.  This underscores a broader problem with defendants' position. Defendants would have the Court dissect this litigation into discrete segments, with fees awarded only for particular aspects–motions, arguments, appeals, and so on–as to which plaintiffs were objectively successful.

That tunnel-vision approach does not reflect the reality of this lawsuit, or of litigation in general.  This case well fits the Supreme Court's description of cases in which the plaintiffs' claims for relief "involve a common core of facts or [are] based on related legal theories." *Hensley*, 461 U.S. at 435.  As noted earlier, the Supreme Court expressly acknowledged that in

such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.*

At its heart, this case has always been primarily about (1) Xerox's application of the phantom account, to employees who were not given clear and adequate notice of its existence and how it was utilized, in violation of ERISA, and (2) how to remedy that violation. This Court, the Court of Appeals, and the Supreme Court have reached varying conclusions over the years concerning the relevant issues. It is hardly surprising that plaintiffs' counsel likewise had varying degrees of success, with respect to those issues, during the course of this litigation.

Had plaintiffs pursued particular, discrete claims or arguments, unrelated to the central claims in this case, long after it became apparent that those claims or arguments were destined for failure, some downward adjustment might be warranted to excise the hours so spent. As stated, the court can and should reduce an award if counsel failed to prevail on claims that were truly unrelated to the claims on which they succeeded. *Hensley*, 462 U.S. at 435. But such a finding is not borne out by the record in this case. The claims, motions and legal theories in this case arose from a nucleus of facts, and cannot be split into separate, distinct components.

Again, the court's focus must be on the significance of the overall relief obtained by the plaintiffs in relation to the hours reasonably expended on the litigation. "Where a plaintiff has obtained excellent results, ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit ... ." *Long Island Head Start Child Dev. Services, Inc. v. Economic Opportunity Comm'n of Nassau County, Inc.*, 865 F.Supp.2d 284, 295 (E.D.N.Y. 2012) (quoting *Hensley*, 461 U.S. at 435). In short, "[t]he result is what matters." *Hensley*, 461 U.S. at 435.

The bottom line in this case is that plaintiffs have established Xerox's violation of ERISA, and plaintiffs' entitlement to relief. That this Court in its January 2016 remedy decision did not adopt wholesale every argument or proposal advanced by plaintiffs does not mean that plaintiffs have achieved merely "partial" success.

Nor will the Court apply some artificial cutoff point of November 15, December 31, 2012, or any other date, and deny plaintiffs any fees for work performed after that date. Following the Second Circuit's 2013 decision, plaintiffs filed several motions, primarily intended to effectuate that decision and to bring this case to a conclusion.  In fact, the parties have very recently litigated issues concerning pre-judgment interest.  I do not view those efforts to have been time ill-spent, unreasonable, or noncompensable.

It also bears repeating that defendants themselves contributed to the amount of time required of plaintiffs' counsel in this litigation.  To say that defendants have conducted a vigorous defense in this case would be an understatement.  Indeed, in my January 2016 decision, this Court observed that "while Xerox has yielded some legal ground over the years ... it has done so grudgingly, block by metaphorical block."  153 F.Supp.3d at 609-10.  After conducting what can well be described as a dogged defense on each and every issue since the inception of this case, defendants' present argument that plaintiffs' counsel have spent an inordinate amount of time on this case must be viewed with a degree of skepticism.

Also significant is the death of plaintiffs' original counsel, Robert Jaffe, in 2009. Following Jaffe's death, his firm, Robert H. Jaffe & Associates, P.A., apparently dissolved.  *See Holland v. Becker*, No. 08-CV-6171, 2013 WL 5786590, at *6 (W.D.N.Y. Oct. 28, 2013).  That left this case, and the related cases in which Jaffe had been involved, in some disarray. Significant issues remained unresolved, and a large group of plaintiffs were left with no representation, likely with little idea how to proceed.

This was not, in other words, akin to a single-plaintiff case, where another lawyer could promptly step in, review the file, and take over.  At the time of Jaffe's death, this case had been through several years of litigation.  The docket sheet was lengthy and the documents were voluminous.  Significant effort was required to move the case forward.  In light of the issues involved, the case also called for counsel with considerable experience in ERISA law.  Those

facts, too, weigh in favor of taking a relatively liberal approach in deciding what hours were reasonably expended.

That is not to say that every minute claimed by plaintiffs' counsel should be compensated. I do believe that some reduction is warranted, as explained below. What I am not prepared to do is take a chainsaw to plaintiffs' request, and lop off whole portions in their entirety, on the ground that plaintiffs did not prevail on this or that argument, or after some arbitrarily chosen date.

After reviewing plaintiffs' time records, I do think there is some fat to be cut. I note first that in their recently filed Supplemental Motion for Costs and Fees (Dkt. #327), plaintiffs seek roughly $788,000 for work performed from February 1 to November 15, 2016. That works out to about $83,000 a month.

It is true that this case was not simply lying dormant during that period; litigation continued. Among other things, defendants filed a motion (Dkt. #297) to set aside this Court's January 24, 2007 Decision and Order, and plaintiffs filed a motion for summary judgment on plan interpretation (Dkt. #302), both of which the Court denied (Dkt. #306, #312). Understandably, those motions required some attorney time. But plaintiffs' counsel have been on pace to rack up about a million dollars a year in attorney's fees, during a period when this case was essentially winding down, as most of the substantive issues had been decided. That seems, on the face of it, excessive.

In more specific terms, while plaintiffs' attorneys' time records are commendably comprehensive and detailed, they are not always indicative of the exercise of billing judgment. As the Supreme Court has explained, counsel

> should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en

banc)).  Under this principle, excessive, redundant, or unnecessary hours are to be excluded from

a fee award, and a district court may apply a reasonable percentage reduction "as a practical

means of trimming fat from [the] fee application."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173

(2d Cir. 1998) (quoting *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146

(2d Cir. 1983)).

The Court will not go line-by-line through plaintiffs' counsel's time records, but by way

of example, Shaun Martin's records over the past year reflect almost daily entries, often totaling

over 8 or 9 hours a day, on research, writing, and other matters, at $675 an hour.  *See* Dkt. #327-

2.  While I do not doubt that those hours were in fact expended, as recorded, I am not convinced

that they could not, or should not reasonably have been reduced, with no appreciable diminution

in the results achieved.

Moreover, Martin is just one of several attorneys who worked on the case during that

period.  As this Court has recognized before, the use of multiple attorneys, while not inherently

unreasonable, almost of necessity tends to result in some inefficiency.  *Eastman Kodak*, 2016

WL 5746664, at *3.  The Court's concerns in that regard are heightened when much of the work

for which compensation is sought was performed by the attorneys with the highest hourly rates.

*See id.* (noting "with some concern" that the hours claimed by counsel indicated "a troublingly

'top-heavy' distribution of labor," with much of the work being performed by partners and senior

counsel).

While it was reasonable in this case to use more than one attorney, the use of several

attorneys nonetheless raises some concerns regarding the amount of time claimed.  By way of

example, John Strain's time records contain numerous entries for telephone conferences and

letters to and from Robert Jaffe.  *See* Dkt. #240-2 *passim*.  Peter Stris's records likewise reflect

many communications with co-counsel.  *See* Dkt. #240-8.  The other attorneys' records include

similar entries.  The Court recognizes the necessity of communication among co-counsel, but that

almost inevitably leads to some inefficiency, and a modest reduction is called for here to account for that.

I also acknowledge plaintiffs' assertion that they have not sought fees for many hours spent by associates and paralegals in this case.  *See* Dkt. #286 at 7; #327-1 at 3.  Perhaps so, but the fact is, those records are not before the Court.  Assuming that associates and paralegals did perform a substantial amount of work on this litigation, the Court will take that into account, but I still conclude that a modest reduction of plaintiffs' attorneys' time is warranted.

Accordingly, the Court finds, in its discretion, that it would be prudent to reduce the hours claimed by plaintiffs' counsel (other than Jaffe, whose claimed time has been reduced by half) by 15%.  Thus, the amount of the award is as follows:

| **Attorney** | **Hours (Adjusted)** | **2011 Hourly Rate** | **Subtotal** |
| --- | --- | --- | --- |
| Jaffe | 1604.75 | $400 | $641,900 |
| Maher | 1411.68 | 540 | 762,307.20 |
| Martin | 3037.9 | 575 | 1,746,792.50 |
| Strain | 364.4 | 385 | 140,294 |
| Stris | 1283 | 575 | 737,725 |
| Watson | 1549.13 | 325 | 503,467.25 |
| Wires | 595.21 | 225 | 133,922.25 |
| Ziegler | 200.1 | 225 | 45,022.50 |
| | | | **Total** |
| | | | $4,711,430.70 |

The Court has reviewed plaintiffs' claimed costs, and finds that they are reasonable and compensable.  The Court will therefore award plaintiffs costs in the full amount sought, $174,174.  The total amount of the award, then, is $4,885,604.70.[6]

## CONCLUSION

Plaintiffs' motion for attorney's fees (Dkt. #241) and their supplemental motion for attorney's fees (Dkt. #327) are granted.  Plaintiffs are awarded attorney's fees in the amount of $4,711,430.70, and costs in the amount of $174,174, for a total award of $4,885,604.70.  Defendants are hereby directed to pay that amount to Stris & Maher, LLP, within thirty (30) days after the date of entry of this Decision and Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 12, 2016.

---

[6]In response to an inquiry from the Court (Dkt. #308), counsel for plaintiffs have agreed that, in awarding fees, the Court need not allocate the fee award among the individual attorneys or firms, because plaintiffs' counsel have agreed among themselves as to the ultimate distribution of any fee award.  Since the firm of Stris & Maher, LLP has performed a substantial amount of the work on this case, the Court will direct that payment be made to that firm.